UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VERNON LEWIS CURRY, JR.,

                Petitioner,

   v.

RONALD HAYNES,

                Respondent.

CASE NO. 3:22-CV-5493-LK-DWC

REPORT AND RECOMMENDATION

Noting Date: May 26, 2023

     The District Court has referred this *habeas corpus* action to United States Magistrate Judge David W. Christel. Petitioner Vernon Lewis Curry, Jr. filed his federal habeas petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court conviction and sentence for first degree murder with a firearm enhancement and first degree unlawful possession of a firearm. *See* Dkt. 6. After review of the relevant record, the Court concludes (1) petitioner failed to exhaust Grounds 2 and 3 and those grounds are procedurally defaulted, and (2) the state court's adjudication of Grounds 1 and 4–8 was not contrary to, nor an unreasonable application of, clearly established federal law. The Court finds an evidentiary hearing is not necessary. The

1    Court recommends the petition be dismissed with prejudice and further recommends a certificate

2    of appealability not be issued.

3                                        **BACKGROUND**

4    **A.    Factual Background**

5            On May 26, 2016, a jury found petitioner guilty of first degree murder with a firearm

6    enhancement, and first degree unlawful possession of a firearm. Dkt. 27-1 at 2 (Ex. 1). Petitioner

7    was sentenced on June 3, 2016 to 570 months. *Id*. at 7. The Washington Court of Appeals,

8    Division II ("state court of appeals") summarized the facts of petitioner's case as follows:

9            At approximately 4:00 AM on September 7, 2014, Michael Ward, Jr. was shot and
     killed in his car near an after-hours club in Tacoma. Curry was arrested for Ward's
10           murder. The State charged Curry with one count of first degree murder with a
             firearm enhancement and one count of unlawful possession of a firearm. [Footnote
11           omitted.]

12           Isaiah Campbell and Xavior Henderson were both near the after-hours club on the
             night Ward was shot and killed. Campbell testified that he was standing outside the
13           club when he heard several gunshots from nearby. Then Campbell saw Ward's car
             backing up. When Campbell approached Ward, he realized that Ward had been shot
14           several times and was struggling to breathe. Campbell grabbed a gun from out of
             Ward's car and fired several shots toward a car coming up the street. Henderson
15           testified that when he heard gunshots, he immediately began running. As
             Henderson was running, he fired three shots toward a brick wall.
16
             Saundra Blanchard lived a few blocks from where the shooting occurred. Several
17           hours after the shooting, Blanchard and one of her neighbors, Korlina Henson,
             found a black ski mask in her yard. A crime scene technician was notified and
18           collected the black ski mask. Forensic testing found Curry's DNA on the inside
             front of the ski mask. Curry's own expert agreed with the forensic findings, but also
19           found an unidentifiable second profile on the outside back of the ski mask.

20           Several days after the shooting, Henson found a firearm in her yard. The firearm
             was collected by a forensic specialist. Forensic testing confirmed that the firearm
21           was the murder weapon.[1]

22    _____

23           [1] Petitioner challenges the forensic evidence upon which the Court of Appeals relied in making this
      statement, asserting the evidence could not "confirm" the firearm was the murder weapon. Dkt. 19 at 43, 44. The
24    State's expert testified it was her opinion based on the testing she performed that the bullets and casings used in the
      murder were fired from the recovered weapon. Dkt. 28 at 1091 (Ex. 30).

1

2      Detective Jeff Katz of the City of Tacoma Police Department was the lead
       investigator assigned to Ward's murder. Detective Katz reviewed security video
3      footage of the area surrounding the murder from several sources. One video showed
       a man in gloves pulling a ski mask down over his face while walking toward the
4      murder scene. And another video showed what appeared to be the same subject
       firing a gun in the direction of Ward's car.

5          . . .

6      Curry testified in his own defense. Curry explained that he had a media company
       called Ylyfe Entertainment. As part of a photo shoot for Ylyfe, Curry wore a black
7      ski mask similar to the one worn by the shooter and found in Blanchard's yard.
       However, Curry testified that the mask was in a container that was stolen from his
8      car months prior to the shooting. During Curry's cross-examination, the State asked
       Curry if he had ever heard of YG Entertainment or Young Gangster Entertainment.
9      Curry denied hearing of YG Entertainment or Young Gangster Entertainment.

10     In response to Curry's testimony, the State moved to introduce two photographs
       showing Curry associated with Y Gangster Entertainment (Exhibit 174A) and a
11     photograph with Curry  displaying the logo for Y Gangster Entertainment (Exhibit
       175). Curry objected. The trial court admitted Exhibit 174A as "direct impeachment
12     for what he just testified to." XV-XVI RP at 1595. Then the trial court admitted
       Exhibit 175 "because [Curry] denied that that was the symbol for Y Gang and it's
13     obvious that it is." XVII RP at 1705.

14     Prior to presenting the photographs, the State proposed a limiting instruction that
       informed the jury that the photographs and associated line of questioning may be
15     considered "for assessing the defendant's credibility and for no other reasons."
       XVII RP at 1686. However, Curry specifically stated that he did not want the trial
16     court to give the proposed instruction. Therefore, the trial court did not give the
       jury a limiting instruction regarding the Y Gangster Entertainment evidence.

17         . . .

18     The jury found Curry guilty of one count of first degree murder with a firearm
19     enhancement and one count of unlawful possession of a firearm. The trial court
       imposed a high-end, standard range sentence of 450 months on the first degree
20     murder conviction. The trial court also imposed a mandatory 120 month firearm
       enhancement to run consecutively. Curry appeals.

21    Dkt 27-1 at 15–21 (Ex. 2).

22

23

24

1    At the beginning of his trial, petitioner asserted he had been deprived of his right to

2 counsel of his choice due to prosecutorial misconduct, and sought dismissal of his charges on

3 that ground. The state court of appeals summarized the facts underlying that claim as follows:

4       Curry moved to dismiss the charges based on government misconduct. Curry
         alleged that the elected Pierce County prosecuting attorney's behavior toward his
5       prior appointed counsel undermined the relationship between Curry and his former
         counsel. Curry relied on a declaration filed by his former attorney. Curry's former
6       counsel stated that the Pierce County prosecuting attorney had referred to him as a
         member of a "confederacy of dunces." Clerk's Papers (CP) at 155. And "the
7       'dunces' were not to receive favorable consideration in the negotiation and
         settlement of criminal cases." CP at 155.

8
         Curry saw the "confederacy of dunces" comment reported in a newspaper article
9       and became concerned about his former counsel's ability to represent him.
         Ultimately, Curry became so concerned about his former counsel's ability to
10      represent him that his former counsel felt it was appropriate to withdraw. Curry's
         former counsel explained,
11
             Deputy Prosecuting Attorney Jesse Williams was representing the
12          state at the time that I withdrew from representing Mr. Curry. I
             informed Mr. Williams of the situation and my decision to
13          withdraw, and also informed Mr. Williams that I did not believe I
             had been treated unusually or unfairly by him. However, I expressed
14          to him my client's concern was the reason for my withdrawal.

15      CP at 156.

16      The trial court concluded that Curry did not have the right to choose his appointed
         attorney and denied his motion to dismiss. Curry proceeded to trial with the counsel
17      appointed to him following his former counsel's withdrawal.

18 Dkt 27-1 at 16–17 (Ex. 2).

19      In petitioner's Personal Restraint Petition ("PRP") proceeding, the state court of appeals

20 summarized the following additional facts regarding the trial proceedings:

21      On the same day as the shooting, Karin Curry – Curry's stepmother – called 911 to
         report her son's possible involvement in Ward's murder. During the call, Karin
22      [footnote omitted] asked for a police officer to come to her house to "talk to him
         regarding the shooting last night in Tacoma." PRP App. Attach. D. When the
23      operator asked what Karin would like to speak to the officer about, she clarified:
         "I'm the -- I'm a parent, and I think there's a possibility that my son was involved...."

24

1    He called me this morning and he was very distraught and so, you know ... I'm not
     sure." PRP App. Attach. D.
2
     . . .
3
     The State also called Karin as a witness. On direct examination, Karin testified that
4    she called the police after receiving a "call from ... [her] grandson's mother ... saying
     that there was speculation that my son could possibly be involved." 8B RP at 579.
5    Defense counsel objected on the basis of hearsay, which the trial court sustained.
     The trial court later instructed the jury to disregard any evidence ruled inadmissible
6    during trial.

7    Later in her testimony, Karin was asked why she called the police. She denied
     calling due to her suspicions regarding her son's involvement in the shooting. The
8    State then began to play a recording of the 911 call. At some point during the
     recording, defense counsel asked to stop the recording and objected on the basis of
9    hearsay, relevance, and prejudice. The trial court overruled the objection, reasoning
     that there was no hearsay in the recording itself, and allowed the tape to be played
10   in its entirety.

11   Dkt. 27-1 at 34, 35–36.

12       After a fourteen-day trial spanning more than three weeks, the jury found petitioner

13   guilty. The Court entered judgment and sentence on June 3, 2016. Dkt. 27-1 at 2–13 (Ex. 1).

14   **B.  Procedural Background**

15       1.  <u>State Court Appeals</u>

16       Petitioner brought a direct appeal challenging his conviction and sentence. Dkt. 27-1 at

17   56–106 (Ex. 6), raising six assignments of error. The state court of appeals affirmed petitioner's

18   conviction in an unpublished opinion. Dkt. 27-1 at 15–29 (Ex. 3). Petitioner sought discretionary

19   review by the Washington Supreme Court ("state supreme court"), raising three grounds: (1) the

20   trial court erred in denying petitioner's motion to dismiss for interference with his right to

21   counsel; (2) the trial court erred in allowing improper impeachment regarding Y Gang

22   Entertainment; and (3) the trial court erred in refusing an instruction on the lesser included

23   offense of manslaughter. Dkt. 27-1 at 204–247 (Ex. 15). The state supreme court denied review

24

without comment on October 31, 2018. Dkt. 27-1 at 31 (Ex. 3). The state court of appeals issued its mandate on November 27, 2018. Dkt. 27-1 at 249 (Ex. 16).

Petitioner, through counsel, filed a PRP in the state court of appeals on November 20, 2019, raising eight issues. Dkt 27-1 at 251–2538 (Ex. 17). The state court of appeals denied the petition in an unpublished opinion. Dkt. 27-1 at 33–49 (Ex. 4). Petitioner filed a *pro se* motion for discretionary review by the state supreme court. Dkt. 27-1 at 2607–2650 (Ex. 23). Petitioner asserted his trial counsel was ineffective in (a) failing to challenge the state's ballistics evidence, (b) failing to challenge the admission of hearsay evidence, and (c) failing to seek a limiting instruction regarding the "Y Gang" evidence. *Id*. Petitioner also claimed his appellate counsel was ineffective and his trial was unfair due to cumulative error. *Id*. The Deputy Commissioner of the state supreme court denied review in a written ruling on December 22, 2021. Dkt. 27-1 at 51–54 (Ex. 5).

Petitioner brought a motion to modify (Dkt. 27-1 at 2652–2678 (Ex 25)), which the state supreme court denied without comment (Dkt. 27-1 at 2680 (Ex. 25)). The state court of appeals issued a Certificate of Finality attesting that its decision denying the PRP became final on May 4, 2022. Dkt. 27-1 at 2682. Ex. 26

2.  Federal Habeas Petition

Petitioner initiated this action on July 6, 2022. Dkt. 1. The petition raises the following eight grounds for relief:

1.  The trial court erred in failing to grant Mr. Curry's motion to dismiss based on prosecutorial misconduct and government mismanagement which denied Mr. Curry his Sixth Amendment constitutional right to counsel;

2.  The trial court erred in allowing improper impeachment of Mr. Curry based on a false association between Mr. Curry, Ylyfe Entertainment and numerous other entities;

3.  The trial court erred in refusing to instruct the jury that they could consider first degree manslaughter as a lesser included offense to the charge of first degree murder;

4.  Mr. Curry's Sixth Amendment constitutional right to the effective assistance of counsel was violated by defense counsel's failure to challenge the state's ballistics testimony;

5.  Mr. Curry's Sixth Amendment constitutional right to the effective assistance of counsel was violated by defense counsel's failure to challenge the admission of Karin Curry's hearsay testimony and 911 call;

6.  Mr. Curry's Sixth Amendment constitutional right to the effective assistance of counsel was violated by defense counsel's failure to seek a limiting instruction regarding the Y Gang photo evidence;

7.  Cumulative error deprived Mr. Curry of his Sixth and Fourteenth Amendment constitutional rights to a fair trial and substantiates the violations of his Sixth Amendment constitutional rights to the effective assistance of counsel;

8.  Mr. Curry received ineffective assistance of appellate counsel on the direct appeal of his convictions.

Dkt. 6 at 10, 15, 21, 24, 28, 35, 39 and 40. After filing his petition and a supplemental memorandum (Dkts. 6, 4), petitioner retained counsel, who sought leave to file an additional supplemental memorandum. Dkt. 11. The Court granted leave to file a supplemental brief, but to avoid duplication struck plaintiff's original supplemental memorandum and ordered petitioner to file a single consolidated brief. Dkt. 12. Petitioner filed his supplemental memorandum on October 21, 2022.[2] On January 27, 2023, respondent filed his answer and the state court record. Dkts. 26, 27–29. Petitioner filed his traverse on February 20, 2023. Dkt. 30.

---

[2] The supplemental memorandum attaches, and incorporates portions of, petitioner's original supplemental memorandum. Dkt. 19 at 26, 31, 34, 45, 50, 52, 54,

**DISCUSSION**

**C.    Exhaustion and Procedural Bar (Grounds 2 and 3)**

    1.    <u>Exhaustion</u>

        Respondent contends petitioner failed to properly exhaust Grounds 2 (permitting improper impeachment) and 3 (failure to give lesser-included offense instruction). Dkt. 26 at 10–18. Specifically, respondent asserts petitioner raised these claims only as a matter of state law and did not present them to the state appellate courts as issues of federal constitutional law. *Id*. In his traverse, petitioner concedes he did not properly exhaust Ground 2. [3] Dkt. 30 at 1. However, petitioner contends his citation to a Federal case (*Beck v. Alabama*, 447 U.S. 625 (1980)) in his briefing of his direct appeal is sufficient to exhaust Ground 3. Dkt. 30 at 2.

        "[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

        A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United

---

[3] The Court agrees petitioner has not properly exhausted this claim, because it was presented to the state court of appeals as solely an issue of state law. *See* Dkt. 27-1 at 94–96.

States Constitution"). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365–66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162–163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state remedies and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

"[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray*, 518 U.S. 162–63. Vague references to broad constitutional principles such as due process, equal protection and a fair trial do not satisfy the exhaustion requirement. *Id*. at 162; *Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir.1999); *Gatlin v. Madding,* 189 F.3d 882, 888 (9th Cir. 1999). Even where the petitioner argues an error deprived him of a "fair trial" or the "right to present a defense," unless the petitioner expressly states he is alleging a specific federal constitutional violation, the petitioner has not properly exhausted the claim. *Johnson v. Zenon,* 88 F.3d 828, 830–31 (9th Cir. 1996). Moreover, the fact that a state law claim was "essentially the same" as the claim subsequently asserted in federal court does not satisfy the exhaustion requirement. *Id.* at 830. Citation to Washington case law, even if the case applied a standard similar to the federal standard, does not suffice to apprise the Washington courts of a federal claim. *Hiivala,* 195 F.3d at 1106–07.

Here, petitioner presented his lesser-included instruction claim (Ground 3) solely as an issue of state law. Petitioner's brief in the state court of appeals opens the discussion of this

1  claim by citing the Washington Constitution and describing the development of Washington's

2  statutory provision permitting conviction on a lesser-included offense. Dkt. 27-1 at 103 (Ex. 6).

3  This introductory discussion cites a single federal case, *Beck*, but only for the proposition that

4  "common law" permitted lesser-included offenses—and that Washington's statutory provision

5  codified "this common law rule." Dkt. 27-1 at 103. The remaining four pages of petitioner's

6  briefing discussing the merits of the lesser-included issue rely solely upon Washington State

7  statutory and case law. *Id*. at 103–107. The discussion makes no reference to any specific federal

8  constitutional guarantee; indeed, it does not mention the United States Constitution at all. *Id*.

9  Petitioner's reply brief likewise discusses the issue as a matter of state law, and cites no federal

10  authority. Dkt. 27-1 at 180–81 (Ex. 10).

11      Similarly, petitioner's discussion of this issue in his petition for discretionary review

12  focusses solely upon the Washington State Constitution and Washington statutes and case law.

13  The petition cites *Beck* only in passing and as an example of "common law" underlying

14  Washington's statute. The petition nowhere invokes the United States Constitution—neither in

15  general nor (as is required to properly exhaust) by citing any specific constitutional provision.

16  *See Gray*, 518 U.S. 162–63. Petitioner's PRP does not raise the lesser-included issue. Dkt. 27-1

17  at 251–309.

18      In short, petitioner raised his lesser-included claim (Ground 3) solely as an issue of state

19  law and his single citation of a federal case was to demonstrate that Washington's statute was

20  based upon "common law" (*not* federal constitutional law).[4] Because petitioner did not raise this

21

22  _____

23      [4] Petitioner's assertion that some of the cited Washington cases also cite *Beck* is likewise insufficient to
establish proper exhaustion. Citation to state cases applying a standard similar to the federal standard does not
suffice to apprise a state court of a federal claim. *Hiivala,* 195 F.3d at 1106–07. Moreover, neither case cited by

24  petitioner applies *Beck* as a matter of federal constitutional law; instead (like petitioner's state court briefing) both

issue before the state courts as federal constitutional claim, he has failed to properly exhaust it.
*See Casey v. Moore*, 386 F.3d 896, 914 (9th Cir. 2004) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.") (internal quotations omitted).

Thus, Grounds 2 and 3 were not properly exhausted.

2.  Procedural Bar

Grounds 2 and 3 are also procedurally defaulted.

Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal claim when it is clear the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear the state court would hold the claim procedurally barred. *Id.* at 1230–31 (citations omitted). If a state procedural rule would now preclude the petitioner from raising his claim at the state level, the claim is considered "procedurally defaulted" and the federal courts are barred from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *O'Sullivan*, 526 U.S. at 845.

Grounds 2 and 3 are procedurally defaulted because if petitioner attempted to present these claims in a subsequent PRP, the state court would find the claims barred by Washington State law. Washington State imposes a one-year statute of limitations on filing a PRP or other post-conviction challenges. RCW § 10.73.090. The state court of appeals issued a mandate finalizing Petitioner's direct appeal on November 27, 2018. Dkt. 27-1 at 249 (Ex. 16). The time to file a petition or motion for post-conviction relief expired November 27, 2019, one year after

merely cite *Beck* as an example of common law upon which Washington's lesser-included statute is based. *See State v. Berlin*, 133 Wn.2d 541, 544–45 (1997); *State v. Warden* 133 Wn.2d 559 (1997).

Petitioner's direct appeal became final. *See* RCW 10.73.090(1), (3)(b). As the one-year statute of limitations has passed, Petitioner is barred from filing a subsequent PRP. *See id*. at (1); *see also Shumway v. Payne*, 223 F.3d 982, 988 n. 22 (9th Cir. 2000) (RCW 10.73.090 has been found by the Ninth Circuit to be an independent and adequate state law barring federal habeas review).

Petitioner would be precluded from asserting Grounds 2 and 3 in the state court; therefore, these grounds are procedurally defaulted in federal court. *See Coleman*, 501 U.S. at 731-32, 735 n.1; *Casey*, 386 F.3d at 920; *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim.").

However, the procedural default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750). To establish "cause," a petitioner must show some objective factor external to the defense prevented him from complying with the state's procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause and prejudice to correct a "fundamental miscarriage of justice" where a constitutional

violation has resulted in the conviction of a defendant who is actually innocent. *Murray,* 477

U.S. at 495–96. To demonstrate he suffered a fundamental miscarriage of justice, viewing all the

evidence in light of new reliable evidence, the petitioner must show "it is more likely than not

that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v.*

*Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, petitioner has not made any argument of cause or prejudice. Petitioner has not

demonstrated some objective factor external to his defense prevented him from complying with

the State's procedural bar rule. Because petitioner has not shown cause, the Court need not reach

the issue of prejudice. *See Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991) (stating a

finding of lack of cause eliminates the need to discuss whether the petitioner was prejudiced).

Furthermore, petitioner has not provided new, reliable evidence showing he is actually innocent

and, therefore, this is not the kind of extraordinary instance where this Court should review the

claim despite the absence of a showing of cause. Petitioner simply did not raise these claims to

the state court as federal constitutional claims. Because petitioner cannot excuse his procedural

default as to these claims, the Court is barred from reviewing them on the merits and they should

therefore be dismissed. *See Casey*, 386 F.3d at 920-21.

The Court recommends Grounds 2 and 3 be dismissed with prejudice because they are

unexhausted and procedurally defaulted.

**D.   Merits Review**

Respondent agrees that petitioner properly exhausted claims 1 and 4–8. The Court

therefore addresses the merits of those claims.

1.   Standard of Review

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the

basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a

1  decision that was contrary to, or involved an unreasonable application of, clearly established

2  Federal law, as determined by the Supreme Court of the United States." In interpreting this

3  portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to"

4  clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion

5  opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts

6  "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite

7  result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

8      Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply

9  because that court concludes in its independent judgment that the relevant state-court decision

10  applied clearly established federal law erroneously or incorrectly. Rather, that application must

11  also be unreasonable." *Williams*, 529 U.S. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69

12  (2003). An unreasonable application of Supreme Court precedent occurs "if the state court

13  identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies

14  it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a

15  state court decision involves an unreasonable application of Supreme Court precedent "'if the

16  state court either unreasonably extends a legal principle from [Supreme Court] precedent to a

17  new context where it should not apply or unreasonably refuses to extend that principle to a new

18  context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting

19  *Williams*, 529 U.S. at 407).

20      Habeas relief may also be granted if the state court's adjudication "resulted in a decision

21  that was based on an unreasonable determination of the facts in light of the evidence presented in

22  the State court proceeding." § 2254(d)(2). The Anti-Terrorism Effective Death Penalty Act

23  ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual

24

findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

2.  Denial of Motion to Dismiss for Prosecutorial Misconduct and Violation of Right to Counsel (Ground 1)

Petitioner contends the trial court erred in denying his motion to dismiss, which asserted misconduct by the elected prosecutor forced the withdrawal of petitioner's counsel of choice. Dkt. 19 at 23–26.  Respondent argues petitioner submitted no evidence establishing any prosecutorial or government misconduct; it was simply petitioner's own choice to change his counsel; and the state court of appeals therefore reasonably determined there was no constitutional violation. Dkt. 26 at 26–29.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. Const. amend. VI. An element of this right is the defendant's "right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (*quoting Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)); *see also Powell v. Alabama*, 287 U.S. 45, 53 (1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."). The erroneous denial of the right to counsel of choice qualifies as structural error; that is, the defendant who establishes that his right to counsel of choice was violated need not demonstrate prejudice in order to be entitled to relief, as would a defendant who is claiming that counsel provided ineffective assistance. *Gonzalez-Lopez*, 548 U.S. at 150. "[T]he right at stake

1    here is the right to counsel of choice, not the right to a fair trial; and that right was violated

2    because the deprivation of counsel was erroneous. No additional showing of prejudice is required

3    to make the violation 'complete.'" *Id.* at 146.

4           However, the right to counsel of choice is "circumscribed in several important respects."

5    *Wheat v. United States*, 486 U.S. 153, 159 (1988). A defendant does not have the right to be

6    represented by (1) an attorney he cannot afford, (2) an attorney who is not willing to represent

7    him, (3) an attorney who has a conflict of interest, or (4) a person (other than himself) who is not

8    a member of the bar. *Id*. A trial court has "wide latitude in balancing the right to counsel of

9    choice against the needs of fairness, … and against the demands of its calendar." *Gonzalez-*

10   *Lopez*, 548 U.S. at 152 (*citing Wheat*, 486 U.S. at 163–64; *Morris v. Slappy*, 461 U.S. 1, 11–12

11   (1983)). Thus, trial courts have the discretion to make scheduling and other decisions that may

12   have the effect of excluding a defendant's first choice of counsel. *Id*.

13          In petitioner's direct review proceeding, the state court of appeals determined petitioner

14   had not established a violation of his rights:

15   Curry argues that the trial court erred by denying his CrR 8.3 motion to dismiss.
     We disagree.
16
17   We review a trial court's decision on a CrR 8.3(b) motion to dismiss for an abuse
     of discretion. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). A trial
18   court abuses its discretion when its decision is manifestly unreasonable, based on
     untenable grounds, or made for untenable reasons. *Michielli*, 132 Wn.2d 240. CrR
19   8.3(b) states,

20           The court, in the furtherance of justice, after notice and hearing,
             may dismiss any criminal prosecution due to arbitrary action or
21           governmental misconduct when there has been prejudice to the
             rights of the accused which materially affect the accused's right to
22           a fair trial. The court shall set forth its reasons in a written order.

23   To grant a CrR 8.3(b) motion to dismiss, the trial court must find (1) arbitrary
     action or governmental misconduct and (2) prejudice affecting the defendant's
24   right to a fair trial. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). The

1     governmental misconduct at issue need not be evil or dishonest, simple
      mismanagement is sufficient. *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d
2     1017 (1993).

3     Here, Curry argues that the Pierce County prosecuting attorney's attitude toward
      his former counsel undermined his former counsel's representation, and left his
4     former counsel with no choice but to withdraw. But Curry has not demonstrated
      any conduct by the State that prejudiced his right to a fair trial. Curry, relying on
5     his former counsel's declaration, alleged that the elected Pierce County
      prosecuting attorney referred to his former counsel as part of a "confederacy of
6     dunces" and that the prosecuting attorney stated that the "confederacy of dunces"
      would not receive favorable negotiations. CP at 155. However, Curry's former
7     counsel acknowledged that he had not been treated unfairly by the deputy
      prosecutor handling the case. And Curry's former counsel withdrew of his own
8     accord.

9     Furthermore, we note that "indigent defendants with appointed counsel do not
      have the right to their counsel of choice." *State v. Hampton*, 184 Wn.2d 656, 662–
10    63, 361 P.3d 734 (2015). Curry has not shown any actual prejudice resulting from
      his former attorney's withdrawal. Accordingly, Curry has failed to demonstrate
11    that the State engaged in conduct that prejudiced his right to a fair trial.

12     Because the State did not engage in conduct that prejudiced Curry's right to a fair
       trial, the trial court did not abuse its discretion by denying Curry's motion to
13     dismiss based on government misconduct.

14    Dkt. 27-1 at 21–23 (Ex. 2).

15        Petitioner contends the state court of appeals improperly imposed a prejudice requirement

16    and therefore failed to apply the structural error analysis applicable to a Sixth Amendment claim

17    for denial of counsel of choice. Dkt. 19 at 23. Respondent contends the state court of appeals'

18    application of a prejudice standard did not conflict with clearly established federal law, because

19    the record demonstrates petitioner did not prove any prosecutorial or governmental misconduct

20    in the first place. *Id*. at 26–29.

21        The state court of appeals did not unreasonably apply clearly established federal law. The

22    court of appeals correctly determined that petitioner had failed to prove the initial premise of his

23    claim—that there had been any prosecutorial or governmental misconduct in the first place.

24

The record on this issue is comprised only of the transcript of the argument on trial counsel's motion to dismiss. Dkt. 28 at 25–32 (Ex. 27). Petitioner's original counsel, Gary Clower, had withdrawn—and new trial counsel was appointed—several months previously, in a proceeding before a different judge after petitioner became concerned about information he had read in a news article. *Id*. at 29–30. At the outset of trial, petitioner's new counsel brought a motion to dismiss, arguing the elected prosecutor had "black listed" prior counsel and refused to engage in plea negotiations with clients he represented. *Id*. at 25. The record in this matter contains neither the papers supporting the motion to dismiss, nor any record of the original withdrawal and substitution. Aside from counsel's argument (which is not evidence), the only evidence in the record is the portion of prior counsel's sworn declaration that was paraphrased or quoted by the court:

> Okay. So I'm looking at Mr. Clower's Declaration. He indicates that he was contacted by friends and family of Mr. Curry and that they had wanted to talk to him about retaining him, but the ultimately—he was appointed by the Department of Assigned Counsel. . . .
>
> In the Declaration, it is from January 19, 2016, paragraph 7 does talk about Deputy Prosecutor Williams and it's clear that it didn't have anything to do with Mr. Williams and his ability to work with Mr. Williams. . . .
>
> Looking at paragraph 7 of Mr. Clower's Declaration, saying 'Also informed Mr. Williams . . . that I did not believe I had been treated unusually or unfairly by him. However, I expressed to him my client's concern with [sic] the reason for my withdrawal.'

Dkt. 28 at 29, 30 (Ex. 27)

Petitioner has provided no evidence of prosecutorial or governmental misconduct. There is simply no factual support for petitioner's argument he was forced to change counsel in order to receive favorable plea offers. Instead, the only evidence in the record establishes that prior counsel [Clower] "did not believe [he] had been treated unusually or unfairly by [the

prosecutor]." *Id*. Indeed, the state court references the prior counsel's statement that it was not

prosecutorial misconduct, but "my client's concern" that led to counsel's withdrawal. *Id*. Thus,

there is no factual foundation for the premise of petitioner's claim; he has provided no evidence

to support a claim that the government improperly denied petitioner his counsel of choice.

The state court of appeals did not unreasonably determine the facts in light of the

evidence presented in the state court proceeding when it held petitioner had failed to prove any

misconduct. Furthermore, in light of the lack of a factual predicate for petitioner's claim, the

state court of appeals' conclusion that petitioner's rights were not violated did not unreasonably

apply federal law. As there was no evidence to support the existence of structural error with

regard to Petitioner's Sixth Amendment claim for denial of counsel of choice, the state court of

appeals was not unreasonable in applying a prejudice standard—nor in its determination

petitioner was not prejudiced.

Accordingly, the Court recommends Ground 1 be dismissed.

3. Ineffective Assistance of Trial Counsel (Grounds 4–6)

Petitioner asserts his trial counsel was ineffective by failing to: (a) challenge the state's

ballistics evidence, (b) challenge the admission of Karin Curry's hearsay testimony and 911 call,

and (c) seek a limiting instruction on "Y Gang" photos admitted for impeachment purposes. Dkt.

6 at 24–39. Respondent contends the state court of appeals and state supreme court properly

applied the applicable legal standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984).

a. *Legal Standard*

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-

assistance claim is that counsel's unprofessional errors so upset the adversarial balance between

1  defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."

2  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

3      Claims of ineffective assistance of counsel are evaluated under the two-prong test set

4  forth in *Strickland*. A defendant must prove (1) that counsel's performance was deficient and, (2)

5  that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The reviewing

6  court need not address both components of the inquiry if an insufficient showing is made on one

7  component. *Id*. at 697.

8      Under the first prong of the *Strickland* test, a petitioner must show that counsel's

9  performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of

10  counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney

11  performance requires that every effort be made to eliminate the distorting effects of hindsight, to

12  reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

13  counsel's perspective at the time." *Id*. In order to prevail on an ineffective assistance of counsel

14  claim, a petitioner must overcome the presumption that counsel's challenged actions might be

15  considered sound trial strategy. *Id*.

16      The second prong of the *Strickland* test requires a showing of actual prejudice related to

17  counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

18  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

19  would have been different. A reasonable probability is a probability sufficient to undermine

20  confidence in the outcome." *Id*. at 694.

21      While the Supreme Court established in *Strickland* the legal principles that govern claims

22  of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate

23  whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S.

24

at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. Under this "doubly deferential" standard, "a federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (quoting *Harrington*, 562 U.S. at 101) (emphasis in original). As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.

   *b. Failure to challenge State's Ballistics Testimony (Ground 4)*

   Petitioner contends counsel was ineffective in failing to challenge the scientific basis of ballistics testimony presented by the State's expert witness, Brenda Walsh, based upon toolmark identification. Dkt. 6 at 24–28. Petitioner asserts counsel should have objected to the admissibility the evidence under the test enunciated in *Fry v. United States*, 293 F. 1013 (D.C. Cir. 1923), and should have conducted a more vigorous cross-examination on the limitations of toolmark identification. *Id*. Respondent argues the state courts properly applied the *Strickland* standard. Dkt. 26 at 32–38. Respondent asserts the state court reasonably determined petitioner had not established the trial court would have excluded the evidence if counsel had objected, arguing the evidence was "widely accepted" at the time of petitioner's trial. *Id*. at 36. Respondent further asserts the state courts reasonably determined counsel's cross-examination decisions were not deficient. *Id*. Finally, respondent argues petitioner failed to establish *Strickland's* prejudice prong. *Id*.

   *i. Admissibility*

   To prevail on a claim for ineffective assistance of counsel for failure to file a motion, petitioner must show "that (1) had his counsel filed the motion, it is reasonable that the trial court

would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999), citing *Kimmelman v. Morrison*, 477 U.S. 365, 373–74 (1986).

In its opinion on petitioner's PRP, the state court of appeals concluded petitioner had not established counsel's failure to object to the admission of toolmark testimony was deficient:

> "Decisions on whether and when to object to trial testimony are classic examples of trial tactics. Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (citations omitted), *review denied*, 193 Wn.2d 1038 (2019). Reversal is required only if defense counsel had no valid strategic reason for failing to object, an objection likely would have succeeded, and the result of the trial would have been different if the evidence had not been admitted. *Id.* at 508-09.
>
> . . .
>
> The *Frye* test helps determine the admissibility of expert testimony based on a novel scientific theory. *Id.* at 148. Expert testimony is admissible under *Frye* if "the theory and underlying methodology have been accepted in the relevant scientific community." *Id.* at 149. There must be scientific consensus regarding the reliability of the methodology. *Arndt*, 194 Wn.2d at 798.
>
> Significantly, "the *Frye* test focuses on general scientific theories, not particular opinions based on those theories." *Green*, 182 Wn. App. at 149. *Frye* is not implicated if an expert's opinions are based on generally accepted theories, even if those opinions themselves are not generally accepted. *Id.* "[T]he application of accepted techniques to reach novel conclusions does not raise *Frye* concerns." *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 919, 296 P.3d 860 (2013). And disputes over whether an acceptable technique was correctly performed in a particular situation go to the weight, not the admissibility, of the testimony. *State v. Bander*, 150 Wn. App. 690, 699, 208 P.3d 1242 (2009).
>
> To demonstrate that Walsh's analysis is not generally accepted within the relevant scientific community, Curry relies principally on 2008 and 2009 reports from the National Research Council of the National Academy of Sciences as well as the 2016 President's Council of Advisor's on Science and Technology's report. These reports emphasized that firearm identification based on bullet markings depends on the subjective assessment of the examiner and not on any objective standards.
>
> However, in *State v. DeJesus*, 7 Wn. App. 2d 849, 436 P.3d 834, *review denied*, 193 Wn.2d 1024 (2019), Division One of this court rejected a similar argument.

1

2    In *DeJesus*, the State presented expert testimony concluding that two sets of cartridge casings had consistent markings, indicating that they were fired from the same gun. *Id.* at 858. On appeal, the defendant argued the ballistics identification testimony was inadmissible under *Frye*. *Id.* at 859. The defendant cited the same three reports on which Curry relies. *Id.* at 861.

3

4    The court concluded that the trial court did not err in admitting the expert's testimony under *Frye* and ER 702. *Id.* at 865. The court stated, "[T]he reports on which DeJesus relies do not affect the general scientific acceptance of ballistic identification. Instead, the problems they espouse bear on the question of reliability of the individual test and tester at issue. These questions are then considered by the trier of fact in assessing the weight to be given to the evidence." *Id.* at 863-64. We agree with *DeJesus*.

5

6

7

8    In addition, Curry's primary concern appears to be that Walsh stated her opinions with certainty and without equivocation rather than acknowledging that her markings analysis was not an exact science. But Walsh's specific opinions regarding the reliability of her analysis do not implicate *Frye*. *See Green*, 182 Wn. App. at 149.

9

10

11    Finally, the record is insufficient for this court to determine whether a *Frye* objection would have been successful in the trial court. Because no objection was made, the State had no opportunity to present evidence showing that Walsh's analysis was generally accepted in the relevant scientific community.

12

13    We conclude that Curry cannot establish that the trial court would have excluded Walsh's testimony if he had objected.

14

15    Dkt. 27-1 at 41–42.

16    The state court of appeals reasonably applied the *Strickland* standard. The scholarly

17    articles upon which petitioner relies, while critiquing toolmark analysis, do not purport to

18    address whether it should be admissible. Indeed, the most critical report, the 2016 report from

19    President's Council of Advisors on Science and Technology ("PCAST") (which post-dates the

20    trial in this case) expressly disclaims any such determination: "'Judges' decisions about the

21    admissibility of scientific evidence rest solely on <u>legal</u> standards; they are exclusively the

22    province of the courts and PCAST does not opine on them.'" *DeJesus*, 7 Wn. App. at 863

23    (quoting PCAST report at 4). Furthermore, as noted by the court in *DeJesus*, during the pre-2016

24

1  time period relevant to this case, courts around the country "universally held that toolmark

2  analysis is generally accepted." *DeJesus*, 7 Wn.App. at 864–865 (collecting cases).

3        Petitioner cites scholarship and recent caselaw potentially signaling a shift in the accepted

4  use of toolmark evidence. *See*, *e.g. United States v. Adams* 444 F.Supp.3d 1248, 1266 (D. Or.

5  2020) (granting in part *Daubert*[5] motion to exclude toolmark evidence). But petitioner cites no

6  Supreme Court authority holding toolmark evidence inadmissible, and cites no case law

7  establishing the evidence would have been inadmissible in Washington State in 2016. Indeed,

8  federal courts have rejected habeas claims asserting the failure to bring *Fry* or *Daubert*

9  admissibility challenges constituted ineffective assistance of counsel. *See*, *e.g. Stevens v. Davis*,

10  No. C 09-00137 WHA, 2019 WL 249398, at *14 (N.D. Cal. Jan. 17, 2019), *aff'd on other*

11  *grounds*, 25 F.4th 1141 (9th Cir. 2022) (where, at the time of petitioner's trial, "expert evidence

12  on toolmark and firearm identification evidence was universally admissible," counsel was not

13  ineffective in failing to challenge its admissibility); *Avila v. Clarke*, 938 F. Supp. 2d 151, 175 (D.

14  Mass. 2013) (where ballistics evidence has long been deemed admissible, "it is not ineffective

15  assistance of counsel to fail to pursue a futile tactic."); *Cadriel v. Lumpkin*, No. 1:18-CV-080,

16  2021 WL 7159870, at *10 (S.D. Tex. Aug. 30, 2021), *report and recommendation adopted,* No.

17  1:18-CV-00080, 2022 WL 523996 (S.D. Tex. Feb. 22, 2022) (counsel was not ineffective in

18  failing to hire ballistics expert to challenge State's toolmark evidence).

19        Petitioner has not established the state courts unreasonably concluded he had failed to

20  demonstrate a *Frye* motion would be successful. The state courts appropriately applied the

21  *Strickland* test to deny petitioner's admissibility claim.

22              ii.    *Cross-Examination*

23  _____

24        [5] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

1    In further support of Ground 4, Petitioner also contends counsel was ineffective in failing

2    to cross-examine the State's expert on the shortcomings of toolmark analysis. Dkt. 19 at 43.

3    Respondent argues petitioner's contention is inconsistent with the *Strickland* standard, which

4    prohibits such second-guessing of counsel's strategy. Dkt. 26 at 36.

5    In its opinion deciding petitioner's PRP, the Court of Appeals concluded petitioner had

6    failed to establish an absence of any conceivable tactical reason for counsel's cross-examination

7    decisions:

8    > Defense counsel may have decided that without an expert of his own, any attempt
     > to challenge Walsh's opinions would not have been effective. And undertaking a
9    > vigorous cross-examination may have mislead the jury into believing that Curry
     > was guilty if they agreed with Walsh that the Sig Sauer pistol was the murder
10   > weapon. Counsel reasonably may have believed that the better strategy was to point
     > out on cross-examination of Walsh that there was no DNA or fingerprint evidence
11   > connecting Curry to the pistol.

12   Dkt. 27-1 at 43 (Ex. 4). The Deputy Commissioner of the state supreme court ("Deputy

13   Commissioner") further observed that counsel's cross-examination chose to focus on issues

14   separate from the connection of the bullet casings to the recovered weapon:

15   > Defense counsel did not object to the expert's opinion on the basis it was not
     > scientifically accepted, nor did he cross-examine the expert about the validity of
16   > her analysis or her ability to make conclusive statements. Rather, counsel
     > established through cross-examination that the expert did not know of any
17   > fingerprint analysis conducted on the casings, that there were numerous other
     > casings at the scene that came from a different gun, and that there were bullet
18   > fragments from a third gun.

19   Dkt 27-1 at 2 (Ex. 5). The Deputy Commissioner concluded petitioner "presented no evidence

20   that defense counsel lacked strategic reasons for his decisions or any other evidence that could

21   overcome the presumption of reasonable assistance." *Id*. at 3.

22   The state courts reasonably applied the *Strickland* standard in holding trial counsel was

23   not deficient in his strategic decision to focus upon the lack of a connection between petitioner

24   and the gun, rather than to contest the State's evidence connecting the shell casings to the gun.

1   Defense counsel's theory of the case, as expressed in his closing argument, was "this is a case

2   about identification." Dkt. 29 at 488 (Ex. 33). Counsel emphasized the lack of evidence

3   identifying petitioner "as the person who shot Michael Ward" and the failure of the State to

4   follow up on DNA testing of the recovered weapon and the shell casings. *Id*. at 489, 503.

5   Counsel also emphasized questions regarding the late discovery of the gun in an area previously

6   thoroughly searched—pursuing a strategy of questioning who had placed the gun, instead of

7   focusing on its connection to the murder. *Id*. at 499.

8          In short, counsel's theory sought to emphasize doubts about the connection between

9   petitioner and the crime scene, including the gun; if successful, it would be immaterial whether

10  the recovered gun was the actual murder weapon. And, as the state court of appeals noted, an

11  extensive challenge to the ballistics evidence could have overemphasized the importance of the

12  evidence and detracted from petitioner's theory that it was not relevant. Thus, the state courts

13  reasonably concluded counsel's cross-examination strategy was not deficient.

14         Moreover, petitioner cannot establish prejudice. Petitioner argues the failure to challenge

15  the expert testimony permitted other witnesses to identify the recovered gun as the murder

16  weapon with "unequivocal certainty." Dkt. 30 at 8. But the connection between the bullet casings

17  and the weapon was not crucial to the outcome of the case. As both petitioner's and the

18  prosecution's closing arguments emphasized, the key issue was whether evidence connected

19  petitioner to the crime scene. *See* Dkt. 29 at 488  (Ex. 33) (Defendant's closing, emphasizing

20  lack of identification); Dkt. 29 at 449 (Ex. 33)  (State's closing, emphasizing that "the man in the

21  mask killed Michael Ward, Junior" and "the man in that mask is Vernon Curry, Junior"). There

22  was no evidence linking petitioner to the gun. Instead, the State emphasized evidence including

23  the recovery of petitioner's DNA on the interior of the mask, and cellphone data placing

24

petitioner's phone in the vicinity of the crime. *Id*. Thus, even if the ballistics evidence could have been discredited, it cannot be said that the result of the proceeding would have been different.

The state courts reasonably adjudicated petitioner's claim under the *Strickland* standard. The Court therefore recommends Ground 4 be dismissed.

      *c.   Failure to Seek Mistrial After Karin Curry's Hearsay Testimony and Failure to Challenge Admission of Karin Curry's 911 Call on Confrontation Clause Grounds (Ground 5)*

Petitioner contends his counsel was deficient in failing to move for a mistrial after the trial court sustained an objection to hearsay testimony regarding Ms. Curry's basis for her 911 call, and in failing to object to the separate admission of the recording of Karin Curry's 911 call on Confrontation Clause grounds. Dkt. 6 at 28–35. Respondent argues petitioner has not established a motion for mistrial would have been successful and the state courts reasonably concluded counsel was not deficient in failing to raise a Confrontation Clause objection. Dkt. 26 at 38–46. The Court first addresses the failure to seek a mistrial with respect to Karin Curry's testimony, and then addresses the failure to challenge the separate admission of the 911 call recording.

        *i.   Motion for Mistrial*

Petitioner contends counsel was ineffective for failing to seek a mistrial after Karin Curry testified a third party, Uta Martinez, told her "there was speculation that my son could possibly be involved [in the murder]." Dkt. 28 at 551 (Ex. 28). Counsel objected to the testimony and the trial court sustained the objection. *Id*. at 551–52.

To prevail on an ineffectiveness claim based upon a failure to file a motion, petitioner must show "that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there

1  would have been an outcome more favorable to him." *Wilson,* 185 F.3d at 990, citing

2  *Kimmelman*, 477 U.S. at 373–74.

3      The state court of appeals held petitioner did not meet this burden:

4      [W]hether to move for a mistrial necessarily is a strategic decision. Defense counsel
       may not have wanted a mistrial for various reasons. Again, we can only speculate
5      why counsel did not request a mistrial, which is not a sufficient basis for an
       ineffective assistance of counsel claim. *See Linville*, 191 Wn.2d at 525.
6
7      Further, in order to prevail on a claim that counsel's failure to request a mistrial
       constituted ineffective assistance of counsel, Curry must establish that his counsel's
       request for a mistrial would have been granted. *See State v. Emery*, 174 Wn.2d 741,
8      755, 278 P.3d 653 (2012) (articulating the same standard for a motion to sever).
       "'A mistrial should be granted only when the defendant has been so prejudiced that
9      nothing short of a new trial can insure that defendant will be tried fairly.'" *State v.
       Gaines*, 194 Wn. App. 892, 897, 380 P.3d 540 (2016) (quoting *State v. Gilcrist*, 91
10     Wn.2d 603, 612, 590 P.2d 809 (1979)). The fact that the jury heard this hearsay
       statement was mitigated by the fact that the statement was brief, the trial court
11     immediately sustained Curry's objection, and Karin expressly stated that she was
       told that Curry's involvement in the murder was speculation. Therefore, Curry
12     cannot show that the trial court would have granted a mistrial motion even if
       defense counsel had made one.
13
       Accordingly, we conclude that Curry cannot establish ineffective assistance of
14     counsel on this basis.

15  Dkt. 27-1 at 44 (Ex. 4). The Deputy Commissioner held petitioner had not overcome the

16  presumption his counsel rendered reasonable assistance. Dkt. 27-1 at 53 (Ex. 5).

17      The state court of appeals reasonably concluded petitioner had not established a motion

18  for mistrial would be successful.

19      In Washington, trial courts "should grant a mistrial only when the defendant has been so

20  prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. Only

21  errors affecting the outcome of the trial will be deemed prejudicial." *State v. Mak*, 105 Wash.2d

22  692, 701 (1986). Here, petitioner points to a single, isolated instance of hearsay testimony, which

23  was promptly objected to and sustained. Furthermore, as the state court of appeals observed, the

24

1    testimony on its face was concededly speculative, and neither party made any further reference

2    to it. In light of the large volume of admitted evidence in this case, the state court of appeals was

3    not unreasonable in determining the petitioner had failed to demonstrate the brief instance of

4    hearsay would have met the high standard required for a mistrial.

5           The state court of appeals did not unreasonably apply the *Strickland* standard to

6    petitioner's claim his counsel was ineffective in failing to request a mistrial.

7                    *ii. Confrontation Clause Objection*

8           In support Ground 5, Petitioner also asserts counsel was ineffective for failing to raise a

9    Confrontation Clause objection to the separate admission of Karin Curry's 911 call, because Ms.

10   Curry's statements in the call were based upon an out of court statement by her grandson's

11   mother, Uta Martinez. Dkt. 19 at 47–48.

12          The Confrontation Clause bars "admission of testimonial statements of a witness who did

13   not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior

14   opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 53–54 (2004); *Davis*

15   *v. Washington,* 547 U.S. 813, 821 (2006). The Confrontation Clause applies only to "'witnesses'

16   against the accused, i.e., those who 'bear testimony.'" *Crawford,* 541 U.S. at 51 (citation

17   omitted); *Davis,* 547 U.S. at 823–24. "'Testimony,' in turn, is typically a solemn declaration or

18   affirmation made for the purpose of establishing or proving some fact." *Crawford,* 541 U.S. at 51

19   (citation and some internal punctuation omitted); *Davis,* 547 U.S. at 824. The *Davis* court

20   explained:

21          [a] critical portion of [*Crawford's* ] holding . . . is the phrase "testimonial
            statements." Only statements of this sort cause the declarant to be a "witness"
22          within the meaning of the Confrontation Clause. It is the testimonial character of
            the statement that separates it from other hearsay that, while subject to traditional
23          limitations upon hearsay evidence, is not subject to the Confrontation Clause.

24

*Davis,* 547 U.S. at 821 (citation omitted). *See also Melendez–Diaz v. Massachusetts,* 557 U.S.

305 (2009) (a statement is "testimonial" if it was made for an "evidentiary purpose" and "under

circumstances which would lead an objective witness reasonably to believe that the statement

would be available for use at a later trial") (internal citation and quotation marks omitted). Thus,

nontestimonial statements do not implicate the Confrontation Clause. *Giles v. California,* 554

U.S. 353, 376 (2008). The Confrontation Clause "does not bar the use of testimonial statements

for purposes other than establishing the truth of the matter asserted." *Crawford,* 541 U.S. at 59 n.

9. Additionally, a Confrontation Clause violation is subject to harmless error analysis. *Delaware*

*v. Van Arsdall,* 475 U.S. 673, 684 (1986). A Confrontation Clause violation is harmless, and

does not justify habeas relief, unless it had substantial and injurious effect or influence in

determining the jury's verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993).

　　　　The state court of appeals held counsel's performance was not deficient because a

Confrontation Clause objection would not have been sustained due to the absence of a

testimonial out of court statement:

> Defense counsel's failure to object to testimony constitutes ineffective assistance only if the trial court would have sustained the objection. *Crow,* 8 Wn. App. 2d at 508-09. Therefore, the question here is whether the trial court would have sustained a confrontation clause objection to the 911 call recording if defense counsel had made one.

> The confrontation clause of the Sixth Amendment to the United States Constitution precludes the admission of a "testimonial" out-of-court statement if the declarant is unavailable and the defendant had no prior opportunity to cross-examine the declarant. *State v. Burke,* 196 Wn.2d 712, 725, 478 P.3d 1096 (2021). However, the confrontation clause is inapplicable to out-of-court statements when the declarant appears at trial for cross-examination. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).

> Karin's statements made during the 911 call arguably were testimonial because they identified Curry as a potential suspect in Ward's murder and were not made to meet an ongoing emergency. But because she testified at trial, the admission of Karin's 911 call did not violate Curry's rights under the confrontation clause.

1

2          Curry argues that the 911 call implicates the confrontation clause because the
           source of Karin's statement in the call was a third person – her grandson's mother.
3          However, the 911 call did not mention Karin's grandson's mother or any other
           third person. Instead, Karin stated that "*I think there's a possibility that my son
4          was involved.*" PRP App. Attach. D (emphasis added).

5          There is no indication that the trial court would have sustained a confrontation
           clause objection to the 911 call recording. Accordingly, we conclude that Curry
6          cannot establish ineffective assistance of counsel on this basis.

7    Dkt. 27-1 at 45–46 (Ex. 4). The Deputy Commissioner concluded the state court of appeals

8    correctly applied the applicable standards and petitioner had not overcome the presumption of

9    reasonable assistance. Dkt. 27-1 at 53 (Ex. 5).

10         The trial court admitted the 911 recording after Karin Curry testified she made the call

11   "because [she] wanted to tell them something relating to the homicide that occurred at 38th and

12   Yakima," but denied the reason for her call was "because [she] thought [her] son was involved in

13   that homicide." Dkt. 28 at 558 (Ex. 28). In the recording, which was admitted over petitioner's

14   counsel's hearsay objection, Ms. Curry states she would like to talk to a police officer "regarding

15   the shooting last night in Tacoma." Dkt. 27-1 at 2375 (Ex. 17).  The recording continues:

16         OPERATOR: Okay. And can I tell them what you would like to speak to them
           about?
17
           CALLER:  I'm—I'm the—I'm a parent, and I think there's a possibility my son
18         was involved.

19         . . .

20         OPERATOR:  Okay. And did he tell you something or—

21         CALLER:  No, he didn't. No, he did not. But he called me this morning and he
           was very distraught and so, you know, so—so, you know, I'm not sure, you know.
22   *Id*. at 2376–77.

23

24

1    Petitioner's counsel objected, arguing the basis for Ms. Curry's call was the hearsay

2 statement from Uta Martinez. Dkt. 28 at 560, 561 (Ex. 28). The trial court overruled the

3 objection:

4    The statements that she made aren't hearsay. She says, I think something about
     there's a possibility my son was involved, and that's all she says. And then she talks
5    about him being distraught, which is clearly different than what she just testified
     to. . . . So those are her observations. That's what she tells 911. . . . I'm going to
6    admit and allow the rest of the tape.

7 *Id*. at 562.

8    The admitted evidence contained no statement from any third person. Instead, as the state

9 court of appeals determined, the recording contains only Ms. Curry's statements about her own

10 state of mind and her observations of petitioner's demeanor: "*I* think there's a possibility my son

11 was involved. . . . [H]e was very distraught." Dkt. 27-1 at 2376–77 (Ex. 17) (emphasis added).

12 The 911 recording does not contain a testimonial statement from any witness except Ms.

13 Curry—who testified in person and was available for cross-examination.

14    The state court of appeals reasonably concluded a Confrontation Clause objection would

15 not have been successful, and counsel's performance was not deficient when he relied solely

16 upon a state law hearsay objection.

17    Because the state courts properly applied the *Strickland* standard to both of petitioner's

18 hearsay-related claims, the Court recommends Ground 5 be dismissed.

19    d.  *Failure to Seek Limiting Instruction Regarding "Y Gang" Photos (Ground 6)*

20    Petitioner contends counsel was ineffective in rejecting an offered limiting instruction

21 regarding photos depicting petitioner in conjunction with the term "Y Gang" and "Y Gang

22 Entertainment." Dkt. 6 at 35–38. Respondent argues counsel's decision to forego an instruction

23 that would only draw more attention to the evidence was a reasonable tactical decision, and

24 petitioner was not prejudiced. Dkt. 26 at 48.

The state court of appeals concluded the decision to forego a limiting instruction was not deficient performance, but instead an exercise of reasonable trial strategy:

> Here, the trial court allowed the State to introduce into evidence two photographs from a video featuring Curry and showing the term "Y Gang." The trial court offered to give a limiting instruction, but defense counsel declined. He stated that he did "not want argument that [Curry's] part of a gang and it's a gang shooting." 16 RP at 1687. Counsel elaborated that giving the instruction would be tantamount to "saying don't consider the gang evidence, except for credibility." 16 RP at 1688. In other words, counsel articulated his reasons for his decision on the record.
>
> Curry argues that defense counsel's reasons for rejecting the limiting instruction were unreasonable because the proposed limiting instruction did not mention gang evidence. But defense counsel clearly wanted to avoid emphasizing the Y Gang evidence and believed that giving a limiting instruction would create such an emphasis. Given the strong presumption of reasonableness, *Estes*, 188 Wn.2d at 458, we conclude that defense counsel's strategic decision did not constitute deficient performance. Accordingly, we conclude that Curry cannot establish ineffective assistance of counsel on this basis.

Dkt. 27-1 at 46–47.

The state court of appeals did not unreasonably apply the *Strickland* standard. Here, counsel clearly expressed a tactical reason for rejecting the offer of a limiting instruction:

> THE COURT:  Do you want a limiting instruction or not?
>
> MR. CONNICK:  I do not.
>
> . . .
>
> THE COURT:  You do not want a limiting instruction?
>
> MR. CONNICK: I do not want argument that he's part of a gang and it's a gang shooting. That's highly prejudicial.
>
> THE COURT:  That's not what Mr. Williams is going to do. He wanted to do a limiting instruction saying Exhibit 174A and the line of questioning is only to go to the credibility of the defendant. If you don't want such an instruction –
>
> MR. CONNICK:  Okay. But, Your Honor, I want to make sure I understand, my understanding is he's not getting up there and arguing that he's part of a gang and you're not to—I mean, if you give an instruction on we're about to show you a picture of the defendant in a gang—

1    THE COURT:  No.

2    MR. CONNICK:  That's what the equivalent is. It's saying don't consider the
     gang evidence, except for credibility.

3

4    THE COURT:  Mr. Connick, if you don't want a limiting instruction, I am good
     with that.

5    Dkt. 29 at 371–72. Counsel expressed his concern that a limiting instruction would emphasize

6    gang-related evidence. He made a clear tactical decision to avoid drawing additional attention to

7    the evidence by foregoing an instruction. And, the Court's review of the record shows that after

8    its use to impeach petitioner, the evidence was not referred to further during the trial.

9          Petitioner has not rebutted the presumption that counsel was implementing sound trial

10   strategy. He has not demonstrated that "*every* 'fairminded juris[t]' would agree

11   that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 141 S. Ct.

12   at 2411 (emphasis in original).

13         The state court of appeals did not unreasonably apply the *Strickland* standard to counsel's

14   decision to forego a limiting instruction. The Court therefore recommends Ground 6 be

15   dismissed.

16       4.  Cumulative Error (Ground 7)

17         Petitioner contends the errors he alleges in combination—and "as compounded by trial

18   counsel's multifaced ineffectiveness" deprived him of a fair trial. Dkt. 19 at 53. Respondent

19   argues petitioner's cumulative error claims fail because as he has not established any errors,

20   cumulative prejudice is not possible. Dkt. 26 at 50.[6]

21

22   _____

23         [6] Respondent also contends petitioner has not exhausted the portion of his cumulative error claim pertaining
     to ineffective assistance of counsel. Dkt. 26 at 49. But petitioner raised this claim in his PRP. *See* Dkt. 27-1 at 306
24   (Ex. 17) (arguing "the accumulation" of the errors alleged in the PRP—which asserted ineffective assistance—
     resulted in prejudice to petitioner).

REPORT AND RECOMMENDATION - 34

1    "The Supreme Court has clearly established that the combined effect of multiple trial court

2    errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle*

3    *v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298,

4    302-03 (1973). However, cumulative error only warrants habeas relief when the errors have "so

5    infected the trial with unfairness as to make the resulting conviction a denial of due process."

6    *Parle*, 505 F.3d at 927 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Thus, the

7    essential questions a habeas court must consider when evaluating a claim of cumulative error are:

8    1) whether the combined effect of trial errors rendered a criminal defense "far less persuasive;" and

9    2) whether the combined errors therefore had a "substantial and injurious effect or influence" on

10   the jury verdict. *Parle*, 505 F.3d at 928.

11   The state court of appeals rejected petitioner's claims of cumulative error, both with

12   respect to his merits appeal and with respect to his PRP asserting ineffective assistance of

13   counsel.

14   Curry also argues that the cumulative error doctrine requires reversal of his
     convictions. "The cumulative error doctrine applies where a combination of trial

15   errors denies the accused of a fair trial, even where any one of the errors, taken
     individually, would be harmless." *In re Pers. Restraint of Cross*, 180 Wn.2d 664,

16   690, 327 P.3d 660 (2014). Here, there were three possible errors in Curry's trial:
     (1) improper impeachment evidence, (2) improper vouching during closing

17   argument, and (3) improper bolstering of the value of DNA evidence. However,
     even when taken together, the errors did not deprive Curry of a fair trial.

18   Accordingly, the cumulative error doctrine does not require reversal.

19   Dkt. 27-1 at 28 (Ex. 2) (Merits Opinion)

20   Curry argues that cumulative error denied him a fair trial. Under the cumulative
     error doctrine, the defendant must show that the combined effect of multiple errors

21   requires a new trial. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). Here,
     Curry has not demonstrated that any error denied him a fair trial. Therefore, we

22   hold that the cumulative error doctrine is inapplicable

23   Dkt. 27-1 at 36 (Ex. 4) (PRP Opinion).

24

1    As discussed above, petitioner has failed to demonstrate any prejudicial error; thus, there

2  is no basis to conclude the cumulative impact of these alleged errors caused prejudice. *See*

3  *Thompson v. Calderon*, 109 F.3d 1358, 1369 (9th Cir. 1997, *as amended* Mar. 6, 1997), *rev'd on*

4  *other grounds*, 523 U.S. 538, 566 (1998) ("Finding no prejudice from the errors taken separately,

5  we also find no cumulative prejudice."). In sum, "there are not multiple errors to accumulate and

6  the cumulative error doctrine does not apply." *Chavez v. Uttecht*, 2020 WL 2113768 at *4 (W.D.

7  Wash. May 4, 2020).

8    Petitioner has failed to demonstrate the state court's resolution of his claim of cumulative

9  error was unreasonable. Therefore, Petitioner has not shown the state court's conclusion that there

10  was no cumulative error was contrary to, or an unreasonable application of, clearly established

11  federal law. Accordingly, the Court recommends Ground 7 be dismissed.

12    5.   Ineffective Assistance of Appellate Counsel (Ground 8)

13    Petitioner contends he received ineffective assistance from his counsel in his direct

14  appeal. Dkt. 6 at 40. Petitioner contends in his petition—and asserted in his state court

15  proceedings—that appellate counsel was ineffective in failing to assert in the direct appeal the

16  issues petitioner subsequently raised in his PRP. *Id.*; Dkt 27-1 at 260 (Ex. 17).[7]

17    The *Strickland* standard governing ineffective assistance of counsel also applies to claims

18  pertaining to the effectiveness of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

19  A petitioner claiming ineffective assistance of appellate counsel establishes prejudice by

20  showing "a reasonable probability that, but for his counsel's unreasonable failure to file a merits

21

22  _____

23    [7] The supplemental brief submitted in this matter by petitioner's counsel expresses a different formulation of this claim; it asserts counsel was ineffective in failing to properly raise and brief two issues (admission of gang-related evidence and hearsay), presumably leading to their being procedurally defaulted. Dkt. 19 at 55. But this claim has not been presented to the state courts and is therefore not properly exhausted. *Picard v. Connor*, 404 U.S.

24  270, 276 (1971).

brief, he would have prevailed on his appeal." *Id.* Where a merits brief is filed, appellate counsel has no constitutional obligation to raise every nonfrivolous, colorable issue on appeal, but only those arguments most likely to succeed. *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017); *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983).

The state court of appeals rejected petitioner's claim in light of its determination that the claims raised in the PRP were without merit. Dkt. 27-1 at 49 (Ex. 4). The Deputy Commissioner denied review, holding petitioner had failed to overcome the presumption of reasonable assistance. Dkt. 27-1 at 53 (Ex. 5).

The state courts properly applied the *Strickland* standard. Where appellate counsel did not fail to file a brief altogether, but instead chose to advance only selected issues, petitioner must "show[ ] that a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Robbins*, 528 U.S. at 288. Petitioner has not made that showing with respect to the issues raised in his PRP.

Furthermore, petitioner has not demonstrated prejudice. First, without a showing that the claims were meritorious, petitioner cannot establish that he would have prevailed on his appeal. Second, petitioner was able to, and did, raise any issues he believed counsel overlooked on direct appeal in his timely filed PRP.

The Washington Supreme Court reasonably applied the *Strickland* standard to petitioner's ineffective assistance of appellate counsel claim; this Court should therefore dismiss Ground 8.

**EVIDENTIARY HEARING**

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

1    could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

2    the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether relief

3    is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

4    state court. *Cullen v. Pinholster*, 563 U.S. 170 (2011). A hearing is not required if the allegations

5    would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It

6    follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas

7    relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Pinholster,* 563

8    U.S. 170. "[A]n evidentiary hearing is not required on issues that can be resolved by reference to

9    the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). Under this

10    standard, the Court finds it unnecessary to hold an evidentiary hearing.

11    **CERTIFICATE OF APPEALABILITY**

12         A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

13    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

14    (COA) from a district or circuit judge. A certificate of appealability may issue only if the

15    petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C.

16    § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could

17    disagree with the district court's resolution of his constitutional claims or that jurists could

18    conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-*

19    *El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

20    Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of

21    appealability with respect to this petition.

22

23

24

1

## CONCLUSION

2          For the reasons stated above, the Court recommends the petition be dismissed with

3    prejudice.

4          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

5    fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P.

6    6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

7    review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

8    objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

9    *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

10   imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on May

11   26, 2023, as noted in the caption.

12         Dated this 11th day of May, 2023.

13

14         _____
           David W. Christel
15         Chief United States Magistrate Judge

16

17

18

19

20

21

22

23

24